UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANDREW LEWIS, et al. | CIVIL ACTION |
| VERSUS | NO: 25-558 |
| SCHINDLER ELEVATOR CORP., et al. | SECTION: T (1) |

## <u>ORDER AND REASONS</u>

Before the Court is a Motion to Remand (R. Doc. 15) filed by Plaintiffs, Andrew Lewis and Anthony Stewart, as well as the following motions filed by defendants: Schindler Elevator Corporation's ("Schindler") Motion for Judgment on the Pleadings (R. Doc. 8), Schindler's Renewed Motion for Judgment on the Pleadings (R. Doc. 34), Avendra, LLC's ("Avendra") Motion for Judgment on the Pleadings (R. Doc. 35), and William Key and Gregory Lanier's Motion to Dismiss (R. Doc. 37). The Court has reviewed the briefs, the record, and the applicable law. For the following reasons, Plaintiffs' Motion to Remand (R. Doc. 15) is **DENIED**, Schindler's Motion for Judgment on the Pleadings (R. Doc. 8) is **DENIED AS MOOT**, Schindler's Renewed Motion for Judgment on the Pleadings (R. Doc. 34) is **GRANTED**, Avendra's Motion for Judgment on the Pleadings (R. Doc. 35) is **GRANTED**, and Key and Lanier's Motion to Dismiss (R. Doc. 37) is **GRANTED**.

## I. FACTUAL BACKGROUND

Plaintiffs, employees of the Sheraton Hotel New Orleans ("the Hotel"), allege that on March 2, 2018, they were both injured while riding in an elevator at the Hotel when it "violently and suddenly fell approximately three stories before coming to an emergency stop, causing overwhelming force to slam them into the floor of the elevator car." R. Doc. 5-1, p. 4. Plaintiffs further contend that the elevator in question was serviced and maintained by Schindler pursuant to

1

a contract it had with Avendra, signed July 18, 2013 (the "Supplier Agreement"). R. Doc. 5-1, pp. 2-4; *see also* R. Doc. 5-3, pp. 2-54 (the entire Supplier Agreement). Under the Supplier Agreement, Avendra was responsible for oversight of the elevator performance and ensuring that Schindler followed maintenance protocols. R. Doc. 15-1, p. 2.

On November 5, 2018, Plaintiff Andrew Lewis and his wife, Kamisha Lewis, filed a negligence and loss of consortium action against Schindler, among other defendants, in the Civil District Court for the Parish of Orleans, State of Louisiana. R. Doc. 5-5, pp. 2-17. Anthony Stewart joined as a plaintiff in that suit, *Lewis, et al. v. Schindler Enterprises, LLC, et al.*, No. 2018-11125 (Civ. Dist. Ct., Orleans Parish) ("*Lewis I*") on March 9, 2019. R. Doc. 5-5, pp. 18-25. *Lewis I* remains pending in state court. R. Doc. 25, pp. 1-2.

## II. PROCEDURAL HISTORY

The action presently before the Court was first filed in January 2025 in the Civil District Court for the Parish of Orleans, State of Louisiana. R. Doc. 5, p. 1. Plaintiffs initially named Schindler as the sole defendant, *id.*, but soon amended the state court petition to include Avendra as a defendant, R. Doc. 5-2, pp. 1-2. In the Amended Petition, Plaintiffs allege that both Schindler and Avendra breached the Supplier Agreement, causing damages to Plaintiffs "in the form of attorneys' fees incurred by contingency agreement with counsel pursuing their respective personal injury claims caused by the breach of the agreement." R. Doc. 5-1, p. 4; R. Doc. 5-2, p. 3. Specifically, Plaintiffs claim that Schindler breached the agreement's express warranty to maintain the elevator "in a professional and workmanlike manner" in conformity with "the highest standards of quality in the industry" and "to ensure the safety of all persons and the preservation of property," R. Doc. 5-1, p. 4 (quoting R. Doc. 5-3, p. 39), and that Avendra breached the agreement by "failing to properly inspect the elevator system," R. Doc. 5-2, p. 3.

On March 21, 2025, defendant Schindler removed the action to this Court, asserting that complete diversity exists between Plaintiffs and properly joined defendants.[1] R. Doc. 5, p. 4. The same day, Plaintiffs filed their Second Amended Petition in Louisiana state court, naming the following additional defendants: Marriott International, Inc., d/b/a Sheraton Hotels, LLC/Starwood Hotels & Worldwide Resorts, LLC ("the Sheraton Hotel"); James Cook, the General Manager of the Sheraton Hotel New Orleans; William Key, the Director of Strategic Sourcing for Avendra; and Gregory Lanier, the Director of Field Support and Customer Relations for Avendra. R. Doc. 12-1, pp. 2-3.

Plaintiffs contend that the additional defendants breached the Supplier Agreement in the following ways:

1. Failure to report the March 2, 2018 incident on Elevator 18 at the Sheraton New Orleans Hotel to Avendra . . .;
2. Failure to report other incidents involving Elevator 18 and other elevators inside of the Sheraton New Orleans Hotel to Avendra . . .;
3. Failure to preserve and spoliation of evidence related to incidents involving Elevator 18 and other elevators inside of the Sheraton New Orleans Hotel to Avendra . . .; and
4. Failure to maintain any and all records of malfunctions, call-backs, and issues with any elevator on the subject property pursuant to the [Supplier Agreement] and to the detriment of any potential claimants and the general public.

R. Doc. 12-1, pp. 3-4. Defendants filed a notice of Plaintiffs' new state court pleading to this Court and argued that Plaintiffs "named Mr. Cook as a defendant in an improper effort to defeat diversity jurisdiction and removal." R. Doc. 12, pp. 1-2. Following removal, multiple substantive motions have been submitted to the Court.

---

[1] Because neither Schindler nor Avendra had been properly served at the time of removal, Avendra's consent to the removal of this action was not required. *See* R. Doc. 5, p. 9 (citing 28 U.S.C. § 1446(b)(2)(A); *Crump v. Lawrence*, No. 24-cv-872, 2024 WL 3064608, at *4 (E.D. La. June 20, 2024); *Pate v. ACE Am. Ins. Co.*, No. 22-cv-2004, 2022 WL 3700123, at *1 n.3 (E.D. La. Aug. 26, 2022)).

### a. *Motion to Remand (R. Doc. 15)*

On April 9, 2025, Plaintiffs filed a Motion to Remand to State Court (R. Doc. 15), alleging that non-diverse defendant James Cook was properly added to the suit, and that Schindler has not met its burden of proving that his joinder was fraudulent. R. Doc. 15-1, pp. 5-9. Therefore, Plaintiffs argue, this Court lacks diversity jurisdiction under 28 U.S.C. § 1332. *Id.* at p. 10. Schindler responded to the Motion to Remand, contending that defendant "James Cook[] was improperly joined because there is no reasonable basis to predict that Plaintiffs can recover against him" and therefore, this Court has proper diversity jurisdiction. R. Doc. 25, p. 1. Plaintiffs have not filed a reply in support of the Motion to Remand, and the matter is now submitted.

### b. *Motions for Judgment on the Pleadings (R. Docs. 8, 34, & 35)*

Upon removing the action to this Court, defendant Schindler filed a Motion for Judgment on the Pleadings (R. Doc. 8) pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, alleging that Plaintiffs' Amended Petition should be dismissed because (1) the claim is based on Schindler's supposed breach of its agreement with Avendra, which contains a forum-selection clause requiring disputes to be litigated in either New York state court or the Southern District of New York and (2) by bringing a second suit against Schindler arising from the same elevator accident, Plaintiffs violate the rule against claim splitting. R. Doc. 8-1, pp. 6-14. Plaintiffs responded to the Motion, arguing that it was both procedurally premature and substantively deficient. R. Doc. 16. Schindler filed a reply in support of its Motion, contending that pleadings are closed, and that Plaintiffs have not stated a plausible claim for relief. R. Doc. 24.

Because Schindler was unaware of Plaintiffs' Second Amended Petition when it filed the initial Motion for Judgment on the Pleadings,[2] Schindler filed a Renewed Motion for Judgment on

---

[2] "Plaintiffs eventually served the Second Amended Petition on Schindler on April 23, 2025." R. Doc. 34, p. 1. Schindler filed its Answer to the Second Amended Petition on May 14, 2025. R. Doc. 26.

the Pleadings (R. Doc. 34) on May 27, 2025. Schindler's Renewed Motion states that "[n]othing in Plaintiffs' Second Amended Petition affects [its original] motion" and "incorporates by reference its previously filed memorandum in support of its original motion for judgment on the pleadings." R. Doc. 34, p. 2; R. Doc. 34-1, p. 1. On the same day, defendant Avendra submitted a Motion for Judgment on the Pleadings (R. Doc. 35), incorporating and adopting the arguments set forth in Schindler's Motion, which it states are "equally applicable to Avendra and warrant entry of judgment in its favor." R. Doc. 35-1, p. 1. Plaintiffs subsequently filed a memorandum in opposition to both motions, "reassert[ing] their previously filed Opposition to Schindler's [Original] Motion for Judgment on the Pleadings." R. Doc. 38, pp. 1-2. Because Plaintiffs' response adopted their previously filed opposition to the original motion, Schindler adopted its previously filed reply in support of the renewed motion. R. Doc. 39, p. 1. The Motions for Judgment on the Pleadings are now submitted before the Court.

### c. *Motion to Dismiss (R. Doc. 37)*

On June 4, 2025, defendants William Key and Gregory Lanier filed a Motion to Dismiss (R. Doc. 37) pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that because the Second Amended Petition solely alleges that the defendants breached the Supplier Agreement, to which neither Key nor Lanier is a party, it fails to state a claim against the two defendants upon which relief can be granted. R. Doc. 37-1, pp. 1-4. Accordingly, Key and Lanier argue, Plaintiffs' claims against them should be dismissed. *Id.* at 4. Plaintiffs oppose the Motion to Dismiss, arguing that "Key and Lanier's motion improperly focuses on narrow contractual interpretation while ignoring the factual allegations and legal theories that support liability against them as individuals." R. Doc. 41, p. 5. Specifically, Plaintiffs allege that Key and Lanier's respective positions as Director of Strategic Sourcing and Director of Field Support and Customer Relations for Avendra created

5

individual duties and obligations related to the performance of the Supplier Agreement, and "[t]heir failure to fulfill these duties . . . constitutes actionable conduct that directly harmed Plaintiffs regardless of whether they were formal signatories to the agreement." *Id.* at pp. 4-8. Plaintiffs also contend that Key and Lanier's Motion to Dismiss is premature because "[d]ismissal at this early stage would improperly deny Plaintiffs the opportunity to develop their claims through the discovery process." *Id.* at p. 8. The moving defendants have filed a reply memorandum noting that "Plaintiffs' Opposition to the Motion cites no law or precedent which supports their contentions that any acts by the individual Defendants – who are undisputedly not parties to the [Supplier Agreement] at issue – can be held liable for allegedly breaching a contract to which they are not parties." R. Doc. 42, p. 1. In further support of their motion, Key and Lanier aver that even if "the Court were to accept [Plaintiffs'] allegations as true for the purpose of this Motion, the individual Defendants would have been working within the course of their employment and, through their alleged improper actions, would have caused Avendra to breach the contract at issue." *Id.* at p. 2. Additionally, the movants note that if Plaintiffs are seeking a cause of action for negligent interference with the contract, Louisiana does not recognize such claims. *Id.* Accordingly, Key and Lanier argue that the claims against them must be dismissed with prejudice. *Id.* The Motion to Dismiss is now submitted before the Court.

### III. LAW AND ANALYSIS

#### a.  *Motion to Remand (R. Doc. 15)*

Remand is proper if at any time the Court lacks subject-matter jurisdiction. 28 U.S.C. § 1447(c). "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to State court." 28 U.S.C. § 1447(e).

When challenging a motion to remand, "[t]he party invoking the removal jurisdiction of federal courts bears the burden of establishing federal jurisdiction over the state court suit." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997), *as amended on denial of reh'g* (Dec. 19, 1997) (citation omitted). Because a defendant's invocation of the removal statute "deprives a state court of a case properly before it and thereby implicates important federalism concerns[,]" *id.*, federal courts must construe § 1441 strictly and "scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Gregoire v. Enter. Marine Servs., LLC*, 38 F. Supp. 3d 749, 764 (E.D. La. 2014) (quoting *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 380 (1959)). Any ambiguities regarding whether removal jurisdiction is proper must be resolved against federal jurisdiction and in favor of the party seeking remand. *See, e.g.*, *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

Here, defendant Schindler alleges that this Court has original jurisdiction over the present action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity between Plaintiffs and Defendants. R. Doc. 5, p. 4. At the time Schindler filed its notice of removal, there were two plaintiffs, Lewis and Stewart, and two defendants, Schindler and Avendra. Plaintiffs Lewis and Stewart are both domiciled in Louisiana. R. Doc. 5-1, p. 2. Schindler is incorporated in the State of Delaware and has its principal place of business in Morristown, New Jersey. R. Doc. 5, p. 4. Avendra is an LLC whose sole member is Aramark, Inc., a corporation incorporated in the State of Delaware with its principal place of business in Philadelphia, Pennsylvania. R. Doc. 5, p. 4. Accordingly, complete diversity existed before Plaintiffs filed their Second Amended Complaint.

The question before the Court, however, is whether the additional defendants named in Plaintiffs' Second Amended Complaint destroy this diversity. Plaintiffs allege that due to the addition of defendant James Cook, a Louisiana citizen, this Court now lacks diversity jurisdiction.

7

R. Doc. 15-1, p. 10. Schindler, on the other hand, suggests that Cook was fraudulently joined in an attempt to destroy diversity because there is no reasonable basis for recovery against him. R. Doc. 25, p. 1.

Fraudulent joinder, also referred to as improper joinder, occurs when a plaintiff joins a non-diverse party as a defendant "solely for the purpose of blocking jurisdiction based on diversity." *Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 219 (5th Cir. 2018). If a court determines that the plaintiff has improperly joined a non-diverse defendant, then it "may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant[s]." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (en banc) (citing *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185-186 (1907); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572-73 (5th Cir. 2004) (en banc)).

On a motion to remand, the defendant claiming fraudulent joinder bears the burden of persuading the court that improper joinder has occurred. *Cumpian*, 910 F.3d at 219-20. Improper joinder may be demonstrated "by showing (1) actual fraud in the pleadings or (2) the inability of the plaintiff to establish a cause of action against the nondiverse party in state court." *Id.* at 219 (quoting *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016)) (internal quotation marks omitted). In the latter situation, the Fifth Circuit has directed courts to consider "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant." *Smallwood*, 385 F.3d at 573. To do so, courts "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* "[I]f the complaint is sufficient to state a claim, there is no improper joinder." *Cumpian*, 910 F.3d at 220. The allegations in the complaint should be reviewed in the light most favorable to the plaintiff, with

any contested issues of fact or ambiguities of state law resolved in the plaintiff's favor. *See, e.g.*, *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003); *Cumpian*, 91 F.3d at 220. Accordingly, "[t]he burden of persuasion on those who claim fraudulent joinder is a heavy one." *Travis*, 326 F.3d at 649.

However, if the plaintiff's complaint "misstated or omitted discrete facts that would determine the propriety of joinder," then the district court may elect to "pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573. The Fifth Circuit has cautioned that "a summary inquiry is appropriate only to identify the presence of *discrete and undisputed facts* that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 574.[3] Furthermore, "the motive or purpose of the joinder of in-state defendants is not relevant," and "the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* at 574.

Here, Schindler argues that Plaintiffs' joinder of Cook was improper because they have no conceivable cause of action against Cook for two reasons. R. Doc. 12, p. 3. First, it notes that the only cause of action asserted in the Second Amended Petition is a claim that defendants breached the Supplier Agreement, but the only parties to the Supplier Agreement are Avendra and Schindler. *Id.* Therefore, Schindler argues, Plaintiffs cannot pursue a breach of contract claim against Cook, who is not a party to the contract in question. *Id.* Second, Schindler contends that Plaintiffs may not sue Cook for alleged damages arising from a workplace injury because those claims are "barred by the exclusivity provisions of Louisiana workers' compensation law." *Id.* Because Plaintiffs allege that they were employees of the Sheraton Hotel New Orleans and that Cook was its General

---

[3] Examples of such discrete and undisputed facts include "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, . . . or any other fact that easily can be disproved if not true." *Smallwood*, 385 F.3d at 574 n.12.

Manager, Schindler argues that Plaintiffs may not sue Mr. Cook or the Sheraton Hotel in this action. *Id.* at p. 4.

In support of its first argument, Schindler cites several authorities to demonstrate that non-parties to a contract cannot be bound by its terms. R. Doc. 25, p. 8 (citing *O'Hara v. Globus Med., Inc.*, 181 So.3d 69, 79 (La. Ct. App. 2015) ("It is well settled that only a party to a contract can be bound by its provisions."); La Civ. Code art. 1983 ("Contracts have the effect of law *for the parties*[.]") (emphasis added); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.")). Nowhere in the pleadings do Plaintiffs contend that Cook was a party to the Supplier Agreement in question. Furthermore, the Supplier Agreement plainly states that the parties to the contract are Schindler and Avendra. R. Doc. 5-3.

"In order to succeed on a breach of contract claim, the plaintiff must prove [1] the existence of the contract, [2] a breach of the obligations therein, and [3] damages." *Allday v. Newpark Square I Off. Condo. Ass'n, Inc.*, 20-358 (La. App. 5 Cir. 8/18/21), 327 So. 3d 566, 574. Because Cook is not a party to the Supplier Agreement, Plaintiffs are unable to prove the "existence of the contract," or contractual privity, element of the breach of contract claim.

Accordingly, the Court finds that there is no possibility of recovery under a breach of contract claim against in-state defendant Cook. Having found that Schindler has satisfied its burden of proving improper joinder of in-state defendant Cook, the Court will disregard Cook's citizenship, dismiss Cook from the case, and exercise subject matter jurisdiction over the remaining diverse defendants. Plaintiffs' Motion to Remand (R. Doc. 15) is DENIED.

### b. *Motions for Judgment on the Pleadings (R. Docs. 8, 34, & 35)*

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The purpose

of a Rule 12(c) motion is to "dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hale v. Metrex Rsch. Corp.*, 963 F.3d 424, 427 (5th Cir. 2020) (quoting *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015).

The Court can dismiss a claim under Rule 12(c) when the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.* (citing *Collins v. A.B.C. Marine Towing, L.L.C.*, U.S. Dist. LEXIS 86515, at *6 (E.D. La. June 30, 2015)). The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. *Hale*, 963 F.3d at 427. Accordingly, the Court can dismiss a claim under Rule 12(c) when the "plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Kaiser*, 677 F.2d at 1050. The court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citation omitted). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 570. While a complaint need not contain detailed factual allegations, it does demand more than an unadorned, "the defendant unlawfully harmed me" accusation. *Bartholomew v. Ladreyt*, Civ. A. No. 14-1468, 2015 WL 365525, at *1 (E. D. La. Jan. 27, 2015).

### i.    *Procedural Sufficiency of the Motions*

Here, Plaintiffs argue that Schindler and Avendra's Motions are procedurally premature because "the pleadings are not yet closed, and if they were, Plaintiffs are entitled to discovery and have not yet been given an opportunity to conduct discovery." R. Doc. 16, p. 1. In support of the

assertion that pleadings were not closed, they state that Schindler's Motion was "filed before Plaintiffs made an appearance and before other Defendants named in state court pleadings have been given an opportunity to file an answer." *Id.* at p. 5.

"For purposes of Rule 12(c), pleadings are considered closed once a complaint and answer have been filed, unless a counterclaim, cross-claim, or third-party claim is interposed, in which case the filing of a reply, cross-claim answer, or third-party answer will normally mark the close of the pleadings." *Colapissa Props., L.L.C. v. Assurance Co. of Am.*, No. CIV.A. 06-8063, 2007 WL 2903245, at \*2 (E.D. La. Oct. 2, 2007) (citing *Doe v. United States,* 419 F.3d 1058, 1061 (9th Cir.2005); *Georges River Tidewater Ass'n v. Warren Sanitary District,* 2000 WL 891969 (D. Me. June 28, 2000); Fed. R. Civ. P. 7(a)).

No counterclaims, cross claims, or third-party claims have been filed in this suit, and both Schindler and Avendra, the parties moving for judgment on the pleadings, filed their answers before filing their respective motions. Schindler filed its answer to Plaintiffs' Second Amended Complaint on May 14, 2025, R. Doc. 26, then filed its Renewed Motion for Judgment on the Pleadings on May 27, 2025, R. Doc. 34.[4] Likewise, Avendra filed its answer to Plaintiffs' Second Amended Complaint on May 27, 2025, R. Doc. 36, and filed its Motion for Judgment on the Pleadings the same day, R. Doc. 35. As noted by Schindler in its reply, pleadings need not be closed as to all defendants for a defendant who has already answered to file a motion for judgment on the pleadings. R. Doc. 24, pp. 2-3. Furthermore, Schindler points out that, at the time the motion was filed, Plaintiffs had not served process on any of the named defendants. *Id.* at p. 2.

Much authority exists to support Schindler's proposition, both within and outside of the Fifth Circuit. *See, e.g.*, *Marlowe v. LeBlanc*, No. 18-00063, 2020 WL 6576956, at \*4 (M.D. La.

---

[4] Schindler filed its initial answer to Plaintiffs' First Amended Complaint, as well as its initial Motion for Judgment on the Pleadings on March 24, 2025. R. Docs. 7, 8.

Oct. 26, 2020) (holding that defendant's 12(c) motion was not premature even though other defendants had not answered complaint), *vacated and remanded on other grounds*, No. 20-30738, 2022 WL 2101523 (5th Cir. June 10, 2022); *Spagna v. Tift*, No. 8:19-cv-481, 2020 WL 7075523, at *2 (D. Neb. Dec. 3, 2020) ("The Court concludes that the 12(c) Defendants' motions for judgment on the pleadings are timely because the pleadings are closed as to these defendants."), *aff'd*, 30 F.4th 710 (8th Cir. 2022); *Moran v. Peralta Cmty. Coll. Dist.*, 825 F. Supp. 891, 894 (N.D. Cal. 1993) (holding that disposition of 12(c) motion had no effect on unserved defendant and therefore such motion was timely), *abrogated on other grounds by Radici v. Associated Ins. Cos.*, 217 F.3d 737 (9th Cir. 2000).

Furthermore, this Court has been previously faced with the same question and found that "[i]n cases involving multiple defendants, courts maintain discretion to consider a 12(c) motion even when one of the defendants has not filed an answer." *Ryan v. Tyhunder Restoration, Inc.*, No. CIV.A. 09-3261, 2009 WL 2766468, at *2 (E.D. La. Aug. 26, 2009) (citing *Habeeba's Dance of the Arts, LTD. v. Knoblauch,* No. 06–926, 2006 WL 968642, at *2 (S.D. Ohio April 10, 2006)). "Courts have permitted a motion on the pleadings before all defendants have filed an answer where no prejudice to any party would result." *Id.* (citing *Noel v. Hall*, No. 99-649, 2005 WL 2007876, at *1-2 (D. Or. Aug. 16, 2005)). Accordingly, because the moving defendants have answered Plaintiffs' Second Amended Complaint, the Court finds that the pleadings are closed for purposes of the instant 12(c) motions.

Next, Plaintiffs cite an Eleventh Circuit case, *Perez v. Wells Fargo*, 774 F.3d 1329, 1335 (11th Cir. 2014), to support their assertion that "a judgment on the pleadings is premature if any parties have not had a fair chance to conduct discovery." R. Doc. 16, pp. 5-6. Plaintiffs' reliance on this persuasive authority is misplaced. The *Perez* court found that "*[the plaintiff's] failure to*

*respond to [the movant's] counterclaim* meant that the pleadings had not yet closed" and, therefore, the 12(c) motion was premature. *Perez*, 774 F.3d at 1339. Nowhere in the court's analysis did it consider the parties' ability to conduct discovery.[5] This Court has held previously that "[t]he fact that parties have yet to be engaged in discovery has no bearing on whether the pleadings have closed." *Colapissa Props.*, 2007 WL 2903245, at *2. Furthermore, the issues raised by defendants in the instant motions—enforcement of a contractual choice-of-law provision and application of the rule against claim splitting—are both questions of law that can be appropriately resolved on the pleadings alone. *See Cantu v. Jackson Nat. Life Ins. Co.*, 579 F.3d 434, 437 (5th Cir. 2009) (citing *Abraham v. State Farm Mut. Auto. Ins. Co.*, 465 F.3d 609, 611 (5th Cir. 2006)) ("[The Fifth Circuit] reviews questions of law, including conflicts of law questions, *de novo*."); *Bank of New York Mellon v. Riley*, No. 21-40383, 2022 WL 1773364 (5th Cir. June 1, 2022) (citing *In re Super Van Inc.*, 92 F.3d 366, 371 (5th Cir. 1996); *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743, 746 (5th Cir. 1994)) ("The prohibition of claim splitting is a principle based in *res judicata*. Whether a claim is barred by *res judicata* is a question of law[.]").

Accordingly, the Court finds that Schindler and Avendra's motions for judgment on the pleadings are procedurally sufficient and will analyze the pleadings under the appropriate Rule 12(c) standard.

### ii.  *Application of the Rule 12(c) Standard*

Movants Schindler and Avendra allege that Plaintiffs' claims against them should be dismissed for two reasons. First, the claims are based on the movants' alleged breach of the Supplier Agreement, which contains a forum-selection clause requiring disputes to be litigated in either New York state court or the Southern District of New York. Second, the movants allege that

---

[5] The only mention of discovery in the *Perez* opinion was in the court's analysis of the Rule 55(c) "good cause" standard for setting aside a default judgment. *Perez*, 774 F.3d at 1338-39.

because this is Plaintiffs' second suit arising from the March 2018 elevator incident, Plaintiffs have violated the rule against claim splitting.

The Court will first consider the movants' argument that Plaintiffs have violated the rule prohibiting claim splitting. "The rule against claim splitting prohibits a party or parties in privity from simultaneously prosecuting multiple suits involving the same subject matter against the same defendants." *General Land Off. v. Biden*, 71 F.4th 264, 269-70 (5th Cir. 2023). "Claim splitting occurs when a plaintiff splits 'a single cause of action or claim' by 'advancing one part in an initial suit and attempting to reserve another part for a later suit.'" *Bank of New York Mellon*, 2022 WL 1773364, at *3 (quoting *Texas Emps.' Ins. Ass'n v. Jackson*, 862 F.2d 491, 501 (5th Cir. 1988) (en banc)). Courts in the Fifth Circuit apply a four-part *res judicata* test when evaluating whether claim splitting has occurred:

(1) [whether] the parties in the current action are the same or "in privity with the parties in the prior action";
(2) [whether] "the court that rendered the prior judgment" was a "court of competent jurisdiction";
(3) [whether] the prior action "terminated with a final judgment on the merits"; and
(4) [whether] the "same claim or cause of action" is "involved in both suits."

*Armadillo Hotel Grp., L.L.C. v. Harris*, 84 F.4th 623, 628 (5th Cir. 2023) (quoting *Gulf Island-IV*, 24 F.3d at 746). When the prior suit is still pending and lacks a final judgment, only the first and fourth of these factors are considered. *Id.* (citing *Gulf Island-IV*, 24 F.3d at 746; *Oliney v. Gardner*, 771, F.2d 856, 859). Accordingly, the Court will consider (1) whether the parties in the current action are the same or "in privity with the parties in the prior action" and (2) whether the "same claim or cause of action" is involved in both suits.

First, the Court finds that, for purposes of claim splitting, the parties in the current action are the same as, or in privity with, those in *Lewis I*. Plaintiffs Lewis and Stewart were both plaintiffs in *Lewis I*. R. Doc. 5-5, p. 18 (Second Supplemental and Amended Petition for Damages

15

in *Lewis I*). Defendant Schindler was a named defendant in *Lewis I*. *Id.* at p. 19. In *Lewis I*, Plaintiffs expressly contemplated claims against a then-unidentified elevator maintenance provider listed as "ABC COMPANY, a foreign or domestic entity . . ., who upon information and belief was at all times relevant herein a company responsible for maintenance and operation of the elevator that caused the March 2, 2018 incident at issue." The present suit identifies Avendra as "a service provider contracting to provide inspections of an elevator system pursuant to a written agreement with the relevant owner and/or possessor of the [hotel]." R. Doc. 5-2, p. 3. Plaintiffs may not bypass the rule against claim splitting by pleading claims against an unidentified defendant in a 2018 suit and later filing a separate action based on the same operative facts once that defendant's identity becomes known.

Second, the Court finds that both suits involve the same claim. To determine if the same claim or cause of action is involved in both suits, courts apply the transactional test, which asks "whether two actions were based on the 'same nucleus of operative facts'" and "look to the factual predicate of the claims asserted, not the legal theories upon which the plaintiff relies." *Armadillo Hotel Grp.*, 84 F.4th at 629 (quoting *Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992). The Court's focus here is not whether the cause of action is the same, but whether the relevant claims arise out of a common nucleus of operative facts. *See id.* at 630 (quoting *Houston Pro. Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016)) ("We cannot ignore the similarity of these claims against [defendants] even when viewed in the light most favorable to [plaintiff] . . . because it is the nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted, that defines the claim.") (internal quotation marks omitted).

The moving defendants allege that "this action arises from the same alleged elevator

16

incident on which *Lewis I* is based." R. Doc. 8-1, p. 10. Indeed, the petitions in both suits allege near-identical facts regarding the March 2, 2018, elevator incident and describe causes of action relating to that incident. *Compare* R. Doc. 5-5, pp. 4-6 (*Lewis I* state court petition) *with* R. Doc. 5-1, pp. 1-5 (Plaintiffs' state court petition for the instant suit). Plaintiffs contend that res judicata does not apply to these two suits because "[t]he first suit as a tort suit and the second suit is a breach of contract." R. Doc. 16, p. 7. This argument is without merit because both claims arise out of a common nucleus of operative facts: the March 2, 2018, elevator incident at the Sheraton Hotel New Orleans. The fact that Plaintiffs advance a different legal theory in the present action is immaterial. Accordingly, the rule against claim splitting bars Plaintiffs' instant action against Schindler and Avendra because Plaintiffs previously filed a claim based on the same underlying facts against these same parties.

The Court next turns to the arguments concerning the forum selection clause. Section 14 of the Service Agreement provides as follows:

> Governing Law; Venue; Waiver of Jury Trial. All disputes arising out of this Agreement shall be determined pursuant to the laws of the State of New York, without giving effect to its principles of conflicts of laws. For purposes of determining such disputes, each party may bring a legal action or proceeding exclusively in and irrevocably submits to the exclusive jurisdiction of (i) the Courts of the State of New York (the "State Courts"), and (ii) if federal jurisdiction exists, the United States District Court for the Southern District of New York (the "Federal Court"), it being understood, however, that judgments, orders, or decrees by or from the State Courts or the Federal Court may be appealed to or enforced in any competent court. Each party waives, to the fullest extent permitted by law, (A) any objection that it may now or later have to the laying of venue of any legal action or proceeding arising out of or relating to this Agreement in the State Courts or the Federal Court, and (B) any claim that any action or proceeding bought in any such court has been brought in an inconvenient forum. THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY AND ALL CLAIMS OR CAUSES OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT.

R. Doc. 5-3, p. 10. After plainly stating that "[a]ll disputes" arising out of it are subject to the laws of the State of New York, the Supplier Agreement describes that "each party may bring a legal

action or proceeding exclusively in" New York state or federal court. Accordingly, any party to the contract is bound by this forum selection clause.

While Plaintiffs themselves were not signatories to the Service Agreement, they assert in their petition that they are "third party beneficiaries and/or beneficiaries pursuant to a stipulation pour autrui" contained in the agreement. R. Doc. 5-1, p. 4 (citing R. Doc. 5-3, p. 6). In support, Plaintiffs point to Schedule 1 of the Supplier Agreement: "Supplier does hereby agree for the express benefit of the Owners, Clients, Customer Units and/or Avendra and their respective Affiliates, directors, *employees*, agents, successors and assigns (the foregoing, collectively, the 'Indemnified Parties') as follows . . .." *Id* at p. 3 (citing R. Doc. 5-3, p. 6). The Supplier Agreement defines the terms in this clause as follows: the "Supplier" refers to Schindler, R. Doc. 5-3, p. 2; "Owners" refers to the owners of the Customer Units with which Schindler contracts pursuant to the Supplier Agreement, *id.* at p. 18; "Clients" means any party that has entered into an agreement with Avendra to purchase goods and services from it, *id.* at pp. 16-17; and "Customer Units" are "the businesses or properties . . . operated, managed or leased by a Client and which are the beneficiaries of the services provided by Avendra to the same under any applicable Client Agreement," *id.* at p. 17. Plaintiffs properly allege that their employer, the Sheraton Hotel New Orleans, is "an Owner, Client, and/or Customer Unit" as contemplated by the Supplier Agreement. R. Doc. 5-1. Given the definitions of these terms in the Supplier Agreement, the Court finds this allegation to be plausible. Under this framework, Plaintiffs are considered "Indemnified Parties" to the Supplier Agreement because they were employees of an Owner, Client, and/or Customer Unit. Accordingly, they fall within the category of "each party" to the Supplier Agreement and are thus bound by its forum selection clause.

The moving defendants note that the Fifth Circuit has held that a forum-selection clause in

18

a contract is still binding on non-signatories, R. Doc. 8-1, p. 7 (citing *Vloeibare Pret Ltd. v. Lloyd's Reg. N. Am., Inc.*, 606 F. App'x 782 (5th Cir. 2015)). Indeed, the Fifth Circuit has specifically held that, through the doctrine of direct-benefit estoppel, a non-signatory who either "(1) knowingly seeks and receives 'direct benefits' from the contract; or (2) seeks to enforce the contract or asserts causes of action 'that must be determined by reference to that contract" may be bound to a forum selection clause in the contract. *Vloeibare*, 606 F. App'x at 784 (citing *Hellenic Inv. Fund, Inc. v. Det Norske Vertitas*, 464 F.3d 514, 517-20 (5th Cir. 2006)) ("Although the doctrine typically applies in the arbitration context, we have held that direct-benefit estoppel may bind a non-signatory to a forum selection clause.").

In response, Plaintiffs contend that Louisiana law prohibits the enforcement of forum-selection clauses against third-party beneficiaries of a contract. R. Doc. 16, p. 7. In support of this assertion, Plaintiffs cite the case of *Lakeland Anesthesia, Inc. v. United Healthcare of Louisiana, Inc.*, 2003-1662 (La. App. 4 Cir. 3/17/04), 871 So. 2d 380,  but the Court finds Plaintiffs' reliance on this case is misplaced. In *Lakeland*, the Louisiana Court of Appeal for the Fourth Circuit considered whether claims in a class action suit by several medical providers against a health management organization were subject to arbitration. *Lakeland*, 871 So. 2d at 382-86. Ultimately, the court affirmed the trial court's decision that a non-signatory to an agreement containing an arbitration provision was not required to submit its claims, reasoning that direct-benefit estoppel was not applicable because the plaintiffs had not asserted causes of action that must be determined by reference to the contract in question. *Id.* at 394-395. Specifically, the *Lakeland* plaintiff "emphasize[d] that the sole relevance of the [contract] is that it provides the custom, business practice, or other applicable law" and that "although [its] claims include breach of contract, its claims are also based on oral and quasi contract theories as well as statutory theories, and its claims

19

are plead in the alternative." *Id.* In contrast, Plaintiffs in the instant case have specifically plead breach of contract claims against Schindler and Avendra, *see, e.g.*, R. Doc. 5-2, p. 2 ("First Amended and Supplemented Petition for Breach of Contract"), p. 3 ("Avendra, LLC breached the Avendra Supplier Agreement, causing damages to the Petitioners herein"), thus allowing direct-benefit estoppel to apply in this case. Accordingly, direct-benefit estoppel binds Plaintiffs to the forum selection clause of the Supplier Agreement.

The Court additionally notes that, under New York state law, "a non-signatory may be bound by a forum selection clause in a contract . . . where the non-signatory is a third-party beneficiary." *P.S. Finance, LLC v. Eureka Woodworks, Inc.*, 184 N.Y.S.3d 114, 129 (N.Y. App. Div. 2023) (citations omitted).

Because Plaintiffs have brought their suit in a venue inconsistent with the Supplier Agreement's forum selection clause and impermissibly engaged in claim splitting, the Court will GRANT Schindler and Avendra's respective Motions for Judgment on the Pleadings and dismiss Plaintiffs' claims against them.

### c. *Motion to Dismiss (R. Doc. 37)*

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In evaluating a complaint under Rule 12(b)(6), the district court should confine itself to the pleadings, *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004), and the documents attached to the complaint, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, the court "may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

The court's review must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). A complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Additionally, courts may not rely on "legal conclusions that are disguised as factual allegations." *Jeanmarie v. United States*, 242 F.3d 600, 603 (5th Cir. 2001) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)). If factual allegations are insufficient to raise a right to relief above the speculative level, the claim should be dismissed. *Twombly*, 550 U.S. at 555.

As an initial matter, the Court finds unconvincing Plaintiffs' contention that Key and Lanier's Motion to Dismiss is premature because discovery has not yet occurred. The issue raised by the motion—whether Plaintiffs' Second Amended Complaint states a claim to relief that is plausible on its face—is a legal issue which requires no discovery. Additionally, Supreme Court and Fifth Circuit guidance states that a court's review of a Rule 12(b)(6) motion is limited to the pleadings and documents attached to the complaint, as well as documents attached to the motion

or an opposition, provided that such documents are referred to in the pleadings and central to the plaintiff's claims, further confirming that discovery is unnecessary at this stage.

Key and Lanier seek dismissal of Plaintiffs' breach of contract claims against them, arguing that it is implausible for Plaintiffs to be granted relief for breach of contract claims against them because the defendants are not parties to the Supplier Agreement that forms the basis of the claim. R. Doc. 37-1, pp. 1-4. "In order to succeed on a breach of contract claim, the plaintiff must prove [1] the existence of the contract, [2] a breach of the obligations therein, and [3] damages." *Allday v. Newpark Square I Off. Condo. Ass'n, Inc.*, 20-358 (La. App. 5 Cir. 8/18/21), 327 So. 3d 566, 574. It is well-settled that non-parties to a contract cannot be bound by its terms. *O'Hara v. Globus Med., Inc.*, 181 So.3d 69, 79 (La. Ct. App. 2015) ("It is well settled that only a party to a contract can be bound by its provisions."); La Civ. Code art. 1983 ("Contracts have the effect of law *for the parties*[.]") (emphasis added); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."). The Supplier Agreement plainly states that the parties to the contract are Schindler and Avendra, R. Doc. 5-3, and Plaintiffs implicitly acknowledge in their response that Key and Lanier are not parties to the contract, *see* R. Doc. 41, p. 7 ("Plaintiff's Claims Are Not Precluded by Lack of Direct Contractual Privity"), p. 8 ("Plaintiffs are not simply seeking to bind non-parties to contractual terms…"). Because Plaintiff does not show that either Key or Lanier was a party to the Supplier Agreement, they fail to prove the "existence of a contract," or contractual privity, element of their breach of contract claim. *See, e.g.*, *Upper Room Bible Church, Inc. v. Sedgwick Delegated Auth.*, No. CV 22-3490, 2022 WL 17735546, at *2 (granting motion to dismiss on breach of contract claim where lack of contractual privity existed because "[n]o action for breach of contract may lie in the absence of privity of contract between the parties").

While Plaintiffs do not dispute that Key and Lanier are nonparties to the Supplier Agreement, they nevertheless maintain that their Second Amended Complaint states a plausible claim to relief based on Key and Lanier's roles at Avendra—Director of Strategic Sourcing and Director of Field Support and Customer Relations, respectively—and alleged involvement in the Supplier Agreement's performance.[6] R. Doc. 41, p. 6. This argument fails as a matter of law. The duties Plaintiffs attribute to Key and Lanier arise solely from the Supplier Agreement, and Plaintiffs identify no independent legal basis for imposing individual contractual liability on non-signatory employees. Additionally, Plaintiffs cite no authority recognizing an exception that would permit an expansion of breach-of-contract liability towards these defendant employees.

Plaintiffs further contend that Key and Lanier's "reliance on cases stating that 'only a party to a contract can be bound by its provisions' fails to address the specific legal theories under which Plaintiffs seek to hold Key and Lanier liable." R. Doc. 41, pp. 7-8. Plaintiffs do not identify which "specific legal theories" they invoke.[7] It is clear, however, that Plaintiffs' Second Amended Complaint only states a breach of contract claim against Key and Lanier. *See* R. Doc. 12-1, pp. 3-4 ("WILLIAM KEY and GREGORY LANIER breached the Avendra Supplier agreement . . . caus[ing] damages to [Plaintiffs] in the form of attorney's fees incurred by contingency agreement with counsel pursuing their respective personal injury claims caused by the breach of the

---

[6] Specifically, Plaintiffs allege that "Key and Lanier failed to report the March 2, 2018 incident and other elevator incidents at the Sheraton Hotel to Avendra, failed to preserve evidence related to elevator incidents, and failed to maintain proper records of malfunctions and issues with elevators as required under the contract," and argue that these allegations, if proven true, "would support liability against these individual defendants." R. Doc. 41, pp. 4-5.

[7] Defendants Key and Lanier suggest that Plaintiffs may be implying a cause of action for negligent interference with a contract and note that no such cause of action exists in this instance. R. Doc. 42, p. 2. Under Louisiana law, tortious interference with a contract is a narrow cause of action that requires the following separate elements: "(1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer." *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 229 (La. 1989). At a minimum, the Court finds that Plaintiffs have not pled any *intentional* interference with the Supplier Agreement.

agreement[.]"). Plaintiffs have not pled any independent cause of action against these defendants. Because Key and Lanier are not parties to the Supplier Agreement, and because Plaintiffs have alleged no recognized basis for imposing individual liability upon nonparties, the Second Amended Complaint fails to state a claim upon which relief can be granted. Accordingly, Plaintiffs' claims against Key and Lanier must be dismissed pursuant to Rule 12(b)(6). Key and Lanier's Motion to Dismiss (R. Doc. 37) is GRANTED.

For the reasons stated above,

**IT IS ORDERED** that Plaintiffs' Motion to Remand (R. Doc. 15) is **DENIED**, and that Plaintiffs' claim against defendant James Cook is **DISMISSED**.

**IT IS FURTHER ORDERED** that Schindler's Motion for Judgment on the Pleadings (R. Doc. 8) is **DENIED AS MOOT**, Schindler's Renewed Motion for Judgment on the Pleadings (R. Doc. 34) is **GRANTED**, Avendra's Motion for Judgment on the Pleadings (R. Doc. 35) is **GRANTED**, and Plaintiffs' claims against Schindler and Avendra are **DISMISSED**.

**IT IS FURTHER ORDERED** that William Key and Gregory Lanier's Motion to Dismiss (R. Doc. 37) is **GRANTED**, and that Plaintiffs' claims against Key and Lanier are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 23rd day of March 2026.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

24